Ray D. Hacke, OSB #173647
PACIFIC JUSTICE INSTITUTE
317 Court St. NE, Ste. 202
Salem, OR 97301
(503) 917-4409 Phone
(916) 857-6902   Facsimile

Attorneys for Plaintiff
NAOMI ONOFREI

## UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| NAOMI ONOFREI,<br><br>                              Plaintiff,<br><br>v.<br><br>ORE. HEALTH & SCIENCE UNIV., A Public Corp. and Govt. Entity; GWEN HYATT, An Individual, In Her Official Capacity; WAYNE MONFRIES, An Individual, In His Official and Personal Capacities; RUTH BEYER, An Individual, In Her Official and Personal Capacities; MAHTAB BRAR, An Individual, In His Official and Personal Capacities; JAMES A. CARLSON, An Individual, In His Official and Personal Capacities; DANNY JACOBS, An Individual, In His Official and Personal Capacities; SUSAN KING, An Individual, In Her Official and Personal Capacities; CHAD PAULSON, An Individual, In His Official and Personal Capacities; SUE STEWARD, An Individual, In Her Official and Personal Capacities; STEVE ZIKA An Individual, In His Official and Personal | Case No.:<br><br>**COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES FOR RELIGIOUS DISCRIMINATION IN VIOLATION OF TITLE VII [42 U.S.C. § 2000e-2] AND ORS 659A.030(1)(a); AIDING AND ABETTING EMPLOYMENT DISCRIMINATION [ORS 659A.030(1)(g)]; AND DEPRIVATION OF CIVIL RIGHTS [42 U.S.C. § 1983]**<br><br>**JURY TRIAL REQUESTED** |

Capacities; and DOES 1 THROUGH
50, Inclusive,

Defendants

Plaintiff NAOMI ONOFREI hereby alleges as follows:

**PARTIES**

1.     Plaintiff is, and at all times relevant herein was, a student in the four-year Doctor of Pharmacy ("PharmD") program jointly operated by Oregon State University ("Oregon State") and Defendant OREGON HEALTH AND SCIENCE UNIVERSITY ("OHSU").

2.     Plaintiff is also, and at all times relevant herein was, a practicing Christian who is unable to receive a COVID-19 vaccine because (1) she holds a sincere religious belief that she "cannot use any product that takes its origin in abortion, which is the murder of those made in the image of God," and (2) the manufacturers of all such vaccines available in the United States at or near the time of the events giving rise to this case, to the best of Plaintiff's knowledge, used cells from aborted babies in the vaccines' production.  Because she is unvaccinated, OHSU has actively denied, and continues to actively deny, Plaintiff the opportunity to register for and participate in classes and thereby continue making progress toward her PharmD degree.  Accordingly, Plaintiff is taking a compelled leave of absence from the PharmD program.

3.     Plaintiff at all times relevant herein was also hired to work as a pharmacy intern for OHSU starting on June 16, 2022 before OHSU withdrew its offer of employment.

4.     As a practicing Christian, Plaintiff is a member of a class of employees protected under both Title VII of the federal Civil Rights Act of 1964

("Title VII") and Or. Rev. Stats. § 659A.030(1)(a).  As allowed under Or. Admin. R. 333-019-1010(3)(a), Plaintiff sought from Defendant OHSU a religious exception from the State of Oregon's requirement that all healthcare workers in the state be vaccinated against COVID-19.  OHSU denied Plaintiff such an exemption, as OHSU has expressed overt hostility toward the anti-abortion religious beliefs of certain employees, including Plaintiff, by declaring that those beliefs were unworthy of a religious exception.

5.      Defendant OHSU is, and at all times herein was, a public corporation and governmental entity performing governmental functions and exercising governmental powers, as indicated under Or. Rev. Stats. § 353.020.  OHSU is also, and at all times relevant herein was, an employer as defined by Title VII and Or. Rev. Stats. § 659A.001(4).  OHSU is openly pro-abortion, and its Vaccine Exemption Review Committee ("VERC") has expressed overt hostility toward the religious of views of certain employees who sought religious exemptions from the COVID-19 vaccination requirement, including those of Plaintiff, declaring that those beliefs were unworthy of a religious exception.

6.      Defendant GWEN HYATT ("HYATT") is, and at all times relevant herein was, OHSU's Registrar.  In that role, HYATT is responsible for setting and enforcing policies concerning the registration of students enrolled at OHSU. HYATT is also responsible for permitting or denying students at OHSU the opportunity to re-enroll in a given quarter during OHSU's school year.

7.      Defendants WAYNE MONFRIES ("MONFRIES"), RUTH BEYER ("BEYER"), MAHTAB BRAR ("BRAR"), JAMES A. CARLSON ("CARLSON"), DANNY JACOBS ("JACOBS"), CHAD PAULSON ("PAULSON"), SUE STEWARD ("STEWARD"), and STEVE ZIKA ("ZIKA," and collectively with MONFRIES, BEYER, BRAR, CARLSON, JACOBS,

PAULSON, and STEWARD the "Board Defendants") all serve, and at all times relevant herein served, in various roles on Defendant OHSU's Board of Directors. Defendant JACOBS is, and at all times relevant herein was, also OHSU's president and the only member of OHSU's executive team to serve on OHSU's board. The Board Defendants are, and at all times relevant herein were, directly responsible for establishing OHSU's institutional strategy and policy concerning religious exemptions from COVID-19 vaccinations for OHSU's employees that the VERC was responsible for administering, including determining which religious beliefs were worthy of exemptions and which were not.

8.      For purposes of the injunctive relief Plaintiff seeks, HYATT and the Board Defendants are sued herein in their official capacities, as Plaintiff must name the officials within OHSU who can appropriately respond to the injunctive relief ordered. *See Moses v. Alaska Govts.*, 2022 U.S. Dist. LEXIS 99057 at **14-15 (D. Alaska June 2, 2022). For purposes of the damages Plaintiff seeks, the Board Defendants are sued herein in their personal capacities.

9.      The true names and capacities of Defendants DOES 1 THROUGH 50 (collectively the "DOES"), inclusive, are unknown to Plaintiff, who therefore sues said Defendants under such fictitious names. Each Defendant designated herein as one of the DOES is legally responsible for the events and happenings herein referred to and proximately caused injuries and damages to Plaintiff thereby, as herein alleged. The DOES include members of the VERC, who were directly responsible for making the decision to deny Plaintiff a religious exemption in violation of her constitutional rights. Plaintiff will seek leave of this Court to amend this Complaint to show the DOES' names and capacities once they have been ascertained.

## JURISDICTION

10.     Plaintiff refers to and hereby incorporates the foregoing paragraphs as though fully set forth herein.

11.     This Court has jurisdiction over all Defendants pursuant to 28 U.S.C. § 1331 because Plaintiff's action arises under the constitution and laws of the United States.

12.     This Court has authority to award the requested damages pursuant to 28 U.S.C. § 1343; the requested declaratory relief under 28 U.S.C. §§ 2201 and 2202; the requested injunctive relief under 28 U.S.C. § 1343 and Fed. R. Civ. P. 65; and costs and attorneys' fees under 42 U.S.C. § 1988.

## VENUE

13.     Plaintiff refers to and hereby incorporates the foregoing paragraphs as though fully set forth herein.

14.     Venue is proper in the Court's Portland Division because the events giving rise to this Complaint occurred in the County of Multnomah and all agents, employees, or other persons working for, or in concert with, Defendant OHSU with regard to the events giving rise to this case are located in, employed in, and/or residents of the County of Multnomah.

## GENERAL ALLEGATIONS

15.     Plaintiff refers to and hereby incorporates the foregoing paragraphs as though fully set forth herein.

16.     OHSU is Oregon's only public university – and one of the few state-run universities in the United States – devoted exclusively to educating doctors, nurses, pharmacists, and other healthcare professionals.  According to its website, OHSU operates multiple hospitals and clinics across the state of Oregon in accordance with its healthcare-centered educational and clinical missions.

17.    OHSU is also openly in favor of abortion, which ends the life of an unborn child *in utero*.  In fact, on June 24, 2022 – the same date on which the Supreme Court overturned *Roe v. Wade*, the 1972 decision that made abortion legal nationwide, and declared that because there is no federal constitutional right to abortion, states are now free to decide for themselves whether abortion will be lawful within their borders – OHSU issued a press release headlined "Abortion Is Essential Healthcare" and affirmed its commitment to providing abortions and related services.  *See* Attached **Exhibit "A"** [a copy of said press release].[1]

18.    The Board Defendants serve in the following roles on OHSU's governing board:

      a.  MONFRIES – Chair

      b.  BEYER – Vice Chair

      c.  CARLSON – Senior Advisor

      d.  JACOBS – University President

      e.  KING, PAULSON, and ZIKA – Members

      f.  BRAR – Student Representative

19.    The Board Defendants are, and at all times relevant herein were, collectively responsible for establishing policies and protocols concerning the vaccination of OHSU's students and employees against COVID-19, which involved a virus that had a survival rate exceeding 99 percent.

20.    In August 2021, roughly 18 months after the COVID-19 first arrived in Oregon, the Oregon Health Authority ("OHA"), pursuant to an executive order from Oregon's then-governor, Kate Brown, enacted an administrative rule (the

---

[1] Ironically, the press release also declares OHSU's commitment "to ensuring a ***respectful, welcoming and _inclusive_ place*** to learn, ***_work_*** and receive care for all people regardless of gender, race, ***_religion_*** and sexual orientation" (emphasis added).  As the facts stated herein indicate, OHSU has failed to live up to this stated commitment.

"Vaccine Mandate" or the "Mandate") requiring healthcare workers to be vaccinated against COVID-19 by October 18, 2021.  *See* Or. Admin. R. 333-019-1010.  However, the OHA's Vaccine Mandate allowed healthcare workers to seek, and the hospitals, clinics, and other organizations who employed them to grant, religious exemptions from the vaccination requirement.  *Id.*, subsections (3)-(4).

21.    For purposes of both the OHA's mandate and Oregon law, interns qualify as employees.  *See* Or. Admin. R. 333-019-1010(2)(f)(A) [defining "healthcare providers and healthcare staff" to include student personnel] and Or. Rev. Stats. §§ 659A.001(4)(b) and 659A.350(1).

22.    The OHA's Mandate also expressly states that "[n]othing in this rule is intended to prohibit schools or school-based programs … from … ***Complying with Title VII of the Civil Rights Act, and state law equivalents***, for individuals ***unable*** to be vaccinated due to … a sincerely held religious belief."  Or. Admin. R. 333-019-1010(5)(a) (emphasis added).

23.    In accordance with the OHA's Vaccine Mandate, OHSU required all of its students and employees to either be vaccinated against COVID-19 or be granted a religious or medical exception by October 18, 2021.

24.    Oregon State and OHSU (collectively the "Universities") jointly and collaboratively offer a PharmD program in which students enroll and take classes in Oregon State's College of Pharmacy for two years, then transfer to OHSU to complete their PharmD degree, which is jointly conferred by both Universities.[2]

25.    Plaintiff enrolled in the Universities' PharmD program at the beginning of the 2020-21 school year and completed the first two years of the program at Oregon State.  Plaintiff was able to attend classes on Oregon State's campus in Corvallis despite not being vaccinated against COVID-19.

---

[2] https://pharmacy.oregonstate.edu/ohsu#:~:text=The%20Doctor%20of%20Pharmacy%20program%20at%20Oregon%20State,OSU%20and%20OHSU%20are%20noted%20on%20the%20diploma.

26.     When Plaintiff attempted to transfer to OHSU for the 2022-23 school year, however, OHSU prohibited her from doing so because she had not received a COVID-19 vaccine for religious reasons.

27.     Plaintiff is a practicing non-denominational Christian who opposes abortion on religious grounds: She believes life begins in the womb and that, accordingly, abortion – the ending of a human life *in utero* – is murder, which the Bible explicitly prohibits.

28.     When researching the COVID-19 vaccines currently available in the United States at the time the OHA issued its Vaccine Mandate, Plaintiff discovered that the vaccines' manufacturers used cells from aborted babies either in the testing and development of the vaccines or in the vaccines themselves.

29.     Based on much prayer and Bible study, Plaintiff determined that she was unable, in accordance with Christian principles, to take a COVID-19 vaccine. Accordingly, in preparation for her transfer from Oregon State to OHSU, on or about March 24, 2022, Plaintiff submitted a religious exception request to OHSU. A copy of that request is attached hereto as **Exhibit "B."**

30.     On April 18, 2022, OHSU notified Plaintiff via e-mail (the "April 18 E-mail") that the VERC had rejected her religious exception request.  A copy of the April 18 E-mail attached hereto as **Exhibit "C."**

31.     In denying Plaintiff's request pursuant to policies established by the Board Defendants, the VERC made no assertion that OHSU could not reasonably accommodate Plaintiff's sincere religious beliefs.  *See* Ex. "C."  Rather, the VERC deemed "objection[s] to the vaccine on the basis of fetal cell concerns, either in the vaccines or in testing and development," to be unworthy of accommodation.  *Id.*

32.     The VERC's April 18 E-mail declared that if Plaintiff was not fully vaccinated 21 days before the start of the Fall 2022 term, Plaintiff would be denied admission to OHSU for the 2022-23 school year.  *See* Ex. "C."

33.    Furthermore, near the end of her two years at Oregon State, OHSU offered Plaintiff a pharmacy internship that was to begin on June 16, 2022.  *See* Attached **Exhibit "D"** [a copy of an e-mail from Plaintiff to the VERC concerning her internship].  Not only would Plaintiff be paid during the internship, she would gain valuable experience in her chosen field which would not only apply toward her PharmD degree, but also help her obtain employment after earning that degree.

34.    Due to her beliefs, on June 9, 2022, as allowed under Or. Admin. R. 333-019-1010(3)(a), Plaintiff submitted to OHSU a religious exemption request form to which she attached a letter explaining her religious beliefs.  That form and the accompanying letter are attached hereto as **Exhibit "E."**

35.    Plaintiff missed what would have been her first week on the job at her internship while awaiting the VERC's decision on her religious exemption request. Under Or. Admin. R. 333-019-1010(3)(a), OHSU could not allow Plaintiff to begin work unless she was vaccinated or had been granted a religious exemption.

36.    On June 23, 2022, the VERC informed Plaintiff via e-mail (the "June 23 E-mail") that her religious exemption request with regard to her internship had been denied.  A copy of the June 23 E-mail is attached hereto as **Exhibit "F."**

37.    As in the April 18 E-mail, the VERC's June 23 E-mail declares Plaintiff's religious beliefs about the use of fetal cells in the production of COVID-19 vaccines to be unworthy of accommodation.  *See* Ex. "F."  Accordingly, OHSU withdrew its offer of the internship to Plaintiff.

38.    OHSU effectively forced Plaintiff to choose between receiving government benefits – namely, her schooling and its accompanying PharmD degree, as well as her internship – and abandoning her sincere religious convictions concerning COVID-19 vaccine manufacturers' use of cells from aborted babies in the production of COVID-19 vaccines.  Both Title VII, in the case of employees, and the U.S. Constitution's First Amendment, in the case of

both public university students and government employees, prohibits government entities from forcing individuals to make that choice.

39.    OHSU did not engage in a good-faith, interactive exploration of potential accommodations that would have allowed students or employees whose religious convictions concerning abortion rendered them unable to take a COVID-19 vaccine, including and especially Plaintiff, to continue working, as Title VII requires, or attending school, as the First Amendment requires.

40.    Such accommodations were available.  Had OHSU provided such accommodations, Plaintiff would have happily submitted to them as a condition of staying in school and participating in her internship.

41.    Despite the availability of accommodations that would have allowed Plaintiff to continue working, OHSU offered no accommodations to Plaintiff.

42.    Plaintiff has amassed $57,000 in student loan debt for a PharmD degree that OHSU is actively preventing Plaintiff from earning.  All of that money – not to mention the time and effort Plaintiff has spent pursuing her PharmD degree – will go to waste if she cannot pursue a pharmaceutical career, which she cannot do without her degree.  Moreover, Plaintiff will have significant difficulty paying back her student loans if she cannot pursue a pharmaceutical career.

43.    In addition, Plaintiff has suffered anxiety, depression, and emotional distress as a result of OHSU's discriminatory actions toward her.  OHSU's actions have forced Plaintiff to wrestle with such agonizing decisions as whether to transfer to a pharmacy school in another state, which school to transfer to, whether she is willing to accept the consequences of transferring (such as losing credits, possibly starting over entirely, and paying higher tuition), and even whether to continue pursuing a PharmD degree, and a career in pharmacy, at all.

44.    As a condition of filing the herein lawsuit, Plaintiff has obtained a right-to-sue letter from the EEOC.  That letter is attached hereto as **Exhibit "G."**

45.     Attached hereto as **Exhibit "H"** is a printout from the website TimeandDate.com showing when the 90-day statute of limitations set forth in Plaintiff's right-to-sue letter is set to expire.  Plaintiff has attached this printout hereto as proof that she has timely filed this lawsuit.

<u>FIRST CAUSE OF ACTION:</u><br>
<b>Violation of Title VII – Failure to Provide Reasonable Accommodations<br>
[42 U.S.C. § 2000e-2]<br>
Against Defendant OHSU</b>

46.     Plaintiff refers to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

47.     Title VII of the 1964 Civil Rights Act prohibits employers from "fail[ing] or refus[ing] to hire … any individual … because of such individual's … religion[.]"  42 U.S.C. § 2000e-2(a)(1).

48.     The term "religion," for purposes of Title VII, "includes all aspects of religious observance and practice, as well as belief[.]"  42 U.S.C. § 2000e(j).

49.     As a practicing Christian, Plaintiff belongs to a class of persons protected under Title VII.  42 U.S.C. § 2000e-2(a).

50.     Hired by Defendant OHSU as an intern who would have received compensation for her services, Plaintiff meets the definition of "employee" set forth in Title VII.  42 U.S.C. § 2000e(f).

51.     For purposes of Title VII, "[t]he term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year …"  42 U.S.C. § 2000e(b).

52.     Defendant OHSU is an employer as defined by Title VII.

53.     Plaintiff holds a sincere religious belief that she "cannot use any product that takes its origin in abortion, which is the murder of those made in the

image of God."  *See* Ex. "E."  Plaintiff's belief conflicted with her employment-related duty to receive a COVID-19 vaccine in accordance with the OHA's Vaccine Mandate.  *Id.*

54.     Plaintiff informed her prospective employer, Defendant OHSU, of the conflict between her religious belief concerning the use of cells from aborted babies in COVID-19 vaccines and her employment-related duties.  *See* Ex. "E."

55.     Defendant OHSU discriminated against Plaintiff by declaring her beliefs unworthy of a religious exemption in the June 23 E-mail.  *See* Ex. "F."

56.     Defendant OHSU made no attempt to accommodate Plaintiff's sincere religious beliefs, as Title VII requires, even though OHSU could have provided accommodations that would have allowed Plaintiff to work as a pharmacy intern.

57.     Defendant OHSU made no assertion to Plaintiff that OHSU would incur undue hardship by accommodating Plaintiff's beliefs.  OHSU simply withdrew its offer of a pharmacy internship to Plaintiff.

58.     Religious discrimination is truly what motivated Defendant OHSU to get rid of Plaintiff, any assertion by OHSU to the contrary notwithstanding.

59.     Based on the foregoing, Defendant OHSU has discriminated against Plaintiff in violation of Title VII.

## <u>SECOND CAUSE OF ACTION:</u>
### Violation of State Law Prohibiting Religious Discrimination
### [ORS 659A.030(1)(a)]
### Against Defendant OHSU

60.     Plaintiff refers to and hereby incorporates the foregoing paragraphs as though fully set forth herein.

61.     Like Title VII, Or. Rev. Stats. § 659A.030(1)(a) prohibits employers from refusing to employ an individual on the basis of that individual's religion.

62.     Because Oregon's state law prohibiting employers from discriminating on the basis of religion is modeled after Title VII, and because the analysis for religious discrimination claims under both statutes is identical, Plaintiff declines to restate the facts as set forth in her first cause of action, as those facts are already incorporated as though fully set forth herein.

63.     For purposes of both Or. Admin. R. 333-019-1010, which specifically concerns healthcare workers, and Or. Rev. Stats. § 659A.030(1)(a), an intern qualifies as an employee.  *See* Or. Admin. R. 333-019-1010(2)(f) and ORS §§ 659A.001(4)(b) and 659A.350(1).

64.     Under 42 U.S.C. § 2000e-7, nothing in 42 U.S.C. § 1981a(b)(3), which caps the amount of non-pecuniary and punitive damages that can be awarded to Plaintiff, "shall be deemed to exempt or relieve any person from liability, duty, penalty, or punishment provided by any present or future law of any State[.]"  In other words, an Oregon jury is free to exceed any applicable federal dollar limit in accordance with Oregon law.

65.     Under Oregon law, a jury may award up to $500,000 in noneconomic damages.  *See* Or. Rev. Stats. § 31.710(1).  Oregon law defines "noneconomic damages" to include "subjective, nonmonetary losses, including but not limited to … mental suffering [and] emotional distress[.]"  Or. Rev. Stats. § 31.705(2)(b).

66.     Plaintiff has endured mental suffering and emotional distress due to Defendant OHSU's unlawful discrimination against her.

67.     Or. Rev. Stats. § 659A.885(3) allows for punitive damages against employers such as Defendant SPS who violate Or. Rev. Stats. § 659A.030(1)(a). Oregon law places no cap on punitive damages.

68.     As required under the Oregon Tort Claims Act, Plaintiff has provided notice to Defendant OHSU of its violation of Or. Rev. Stats. § 659A.030(1)(a).

*See* Attached **Exhibit "I"** [a copy of an e-mail and an accompanying letter sent to OHSU's general counsel on October 11, 2022].

69.    Based on the foregoing, in addition to violating Title VII, Defendant SPS has violated ORS 659A.030(1)(a).

### THIRD CAUSE OF ACTION:
**Aiding and Abetting Religious Discrimination by an Employer**
**[ORS 659A.030(1)(g)]**
**Against the Board Defendants and DOES 1-50**

70.    Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

71.    Or. Rev. Stats. § 659A.030(1)(g) prohibits any person from aiding and abetting an employer from engaging in employment discrimination.

72.    The Board Defendants are, and at all times relevant herein were, directly responsible establishing Defendant OHSU's institutional strategy and policy concerning religious exemptions from the OHA's Vaccine Mandate for OHSU's students and employees, including determining which religious beliefs were worthy or unworthy of exemption from the OHA's Vaccine Mandate.

73.    The VERC's members are, and at all times relevant herein were, responsible for enforcing the policy established by the Board Defendants concerning exemptions from the OHA's Vaccine Mandate, including telling those who submitted religious exemption requests that their beliefs were unworthy of accommodation.

74.    In determining that religious beliefs concerning the use of cells from aborted babies in the production of COVID-19 vaccines were unworthy of accommodation, the Board Defendants facilitated the withdrawal of Defendant OHSU's offer of a pharmacy internship to Plaintiff.  The Board Defendants did

this knowing that it was unlawful for OHSU, as Plaintiff's prospective employer, to engage in religious discrimination against Plaintiff.

75.    In their roles as members of Defendant OHSU's VERC, Defendants DOES 1-50 – whose identities have yet to be determined, and whom Plaintiff intends to add as a Defendant after learning their identities through discovery – acted in concert with, or gave substantial assistance to, OHSU to unlawfully discriminate against Plaintiff on account of Plaintiff's religion.  Defendants DOES 1-50 did this knowing that it was unlawful for OHSU, as Plaintiff's prospective employer, to engage in religious discrimination against Plaintiff.

76.    Because Defendant OHSU carried out its religious discrimination against Plaintiff with the assistance of the Board Defendants and Defendants DOES 1-50, the Board Defendants and DOES 1-50 should be held individually and personally liable for their conduct.

## FOURTH CAUSE OF ACTION:
### Violation of Constitutionally Protected Freedom of Religion
### [U.S. Const. amend. I; 42 U.S.C. § 1983]
### Against HYATT, the Board Defendants, and DOES 1-50

77.    Plaintiff refers to and hereby incorporates the foregoing paragraphs as though fully set forth herein.

78.    Under 42 U.S.C. § 1983, anyone who, under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]"

79.    Under 42 U.S.C. § 1983, state actors like HYATT (OHSU's Registrar), the Board Defendants, and the VERC's members – whose identities have yet to be ascertained, and who are thus identified herein as DOES 1-50 –

_____

forfeit their qualified immunity from liability when, acting in their official capacities, they deliberately infringe on constitutional rights. *Scheuer v. Rhodes*, 416 U.S. 232, 237 (1974).

80.    The Free Exercise Clause of the U.S. Constitution's First Amendment, made applicable to states via the Fourteenth Amendment, prohibits state governments from infringing on individuals' freedom of religion.  The Fourteenth Amendment prohibits state governments from "depriv[ing] any person of life, **_liberty_**, or property without due process of law."  U.S. Const. amend. XIV, § 1 (emphasis added).  The term "liberty" includes the freedom of religion.

81.    "The Free Exercise Clause protects against government hostility that is masked as well as overt."  *Church of the Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 534 (1993) (*Lukumi*).  Acting under color of state law, HYATT, the Board Defendants, and the VERC expressed overt hostility toward Plaintiff's religious beliefs concerning COVID-19 vaccines in the following ways:

 a. HYATT, by refusing to allow Plaintiff to register for classes at OHSU for the 2022-23 school year;

 b. The Board Defendants, by declaring Plaintiff's beliefs to be unworthy of accommodation, either in Plaintiff's capacity as a student or in her capacity as a pharmacy intern; and

 c. The VERC (i.e., DOES 1-50), in enforcing the policy enacted by the Board Defendants by denying Plaintiff religious exemptions from the COVID-19 vaccination requirement.

82.    In displaying overt hostility toward Plaintiff's religious beliefs, HYATT, the Board Defendants, and the VERC exceeded constitutional bounds.

83.    Acting under color of state law, HYATT, the Board Defendants, and the VERC – whose members' identities have yet to be ascertained – effectively

_____

penalized Plaintiff for adhering to her sincere religious objection to receiving a COVID-19 vaccine by forcing Plaintiff to choose between the government-provided benefits of completing her PharmD at OHSU and doing a pharmacy internship that would be highly beneficial – if not vital – to her future career prospects and following her religious beliefs.  This, the U.S. Constitution prohibits.

84.     Even assuming Defendant OHSU had a compelling interest in halting the spread of COVID-19 to its employees and patients, HYATT, the Board Defendants, and the VERC's members could – and should – have reasonably accommodated Plaintiff's beliefs.  The actions of the Board Defendants in declaring which religious beliefs were worthy of accommodation, of HYATT in preventing Plaintiff from enrolling at OHSU for the 2022-23 school year, and the VERC's actions in enforcing the policy established by the Board Defendants toward that end, were thus not narrowly tailored and cannot survive strict scrutiny under the U.S. Constitution's First Amendment.

85.     Based on the foregoing, HYATT, the Board Defendants and DOES 1-50, including the members of the VERC, have deprived Plaintiff of her constitutionally protected freedom of religion.

## REQUEST FOR DECLARATORY RELIEF
### Against HYATT, the Board Defendants, and DOES 1-50

86.     Plaintiff refers to and hereby incorporates the foregoing paragraphs as though fully set forth herein.

87.     Eleventh Amendment immunity "is subject to an exception for actions for prospective declaratory or injunctive relief against state officers in their official capacities for their [continuing] violations of federal law" so long as the state officer involved has "some connection with enforcement of the act."  *Mecinas v. Hobbs*, 30 F.4th 890, 903 (9th Cir. 2022) (internal quotations omitted).

88.    As stated *supra*, "[t]he Free Exercise Clause protects against government hostility that is masked as well as overt." *Lukumi*, 508 U.S. at 534. By declaring which religious beliefs were worthy of religious exceptions from the OHA's Vaccine Mandate and which religious beliefs were not, Defendant OHSU, acting pursuant to policy established by the Board Defendants, has openly displayed overt hostility to Plaintiff's religious beliefs in violation of the Free Exercise Clause.

89.    HYATT also displayed hostility toward Plaintiff's religious beliefs by preventing Plaintiff from enrolling in school for the 2022-23 school year, as did the VERC's members – identified herein as DOES 1-50 – in denying religious accommodations to Plaintiff for purposes of both enrolling in school and participating in her pharmacy internship. *See* Exs. "C" and "F."

90.    Based on the foregoing, the Court should declare that Defendant OHSU's policy declaring which beliefs are worthy of religious exceptions to the OHA's Vaccine Mandate and which beliefs are not, and the actions of HYATT and the VERC taken pursuant to that policy, violate the U.S. Constitution's Free Exercise Clause on their face.

## REQUEST FOR INJUNCTIVE RELIEF
### Against HYATT, the Board Defendants, and DOES 1-50

91.    Plaintiff refers to and hereby incorporates the foregoing paragraphs as though fully set forth herein.

92.    As stated *supra*, Eleventh Amendment immunity "is subject to an exception for actions for prospective declaratory or injunctive relief against state officers in their official capacities for their [continuing] violations of federal law" so long as the state officer involved has "some connection with enforcement of the act." *Mecinas*, 30 F.4th at 903 (internal quotations omitted).

93.    Plaintiff requests that the Court preliminarily and permanently enjoin Defendant HYATT, in her role as OHSU's Registrar, to immediately reinstate Plaintiff as a student enrolled in the Universities' PharmD program without requiring her to take a COVID-19 vaccine.  Plaintiff further requests that the Court preliminarily and permanently enjoin HYATT to allow Plaintiff to enroll in classes at OHSU for the 2023-24 school year and allow Plaintiff to complete all classes, clinical hours, and other requirements necessary to earn her PharmD.

94.    Plaintiff requests that the Court preliminarily and permanently enjoin the Board Defendants to invalidate Defendant OHSU's policy declaring which religious beliefs are unworthy of accommodation, as this policy is unconstitutional. In addition, Plaintiff requests that the Court preliminarily and permanently enjoin the Board Defendants to rewrite the policy to reflect no hostility toward specific religious beliefs of any kind.

95.    In addition, Plaintiff requests that the Court preliminarily and permanently enjoin the VERC – whose members are identified herein as DOES 1-50 – to conduct a *de novo* review of Plaintiff's religious accommodation requests with regard to her enrollment as a student and her pharmacy internship and to reinstate her as a student and a pharmacy intern at OHSU, providing reasonable accommodations of her sincerely held religious beliefs, accordingly.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

### **ON ALL CAUSES OF ACTION:**

1.    For declaratory and injunctive relief against WYATT, the Board Defendants, and the members of the VERC, pursuant to both Title VII and 42 U.S.C. § 1983;

2.     For economic damages against Defendant OHSU pursuant to both Title VII and Or. Rev. Stats. § 659A.030(1)(a), and against the Board Defendants and the members of the VERC pursuant to Or. Rev. Stats. § 659A.030(1)(g), in an amount according to proof at trial;

3.     For non-economic damages against Defendant OHSU pursuant to both Title VII and Or. Rev. Stats. § 659A.030(1)(a), and against the Board Defendants and the members of the VERC pursuant to Or. Rev. Stats. § 659A.030(1)(g), in an amount according to proof at trial;

4.     For punitive damages against Defendant OHSU pursuant to both Title VII and Or. Rev. Stats. § 659A.030(1)(a), and against the Board Defendants and the members of the VERC pursuant to Or. Rev. Stats. § 659A.030(1)(g), in an amount according to proof at trial;

5.     For attorney's fees and costs associated with bringing and maintaining this action in accordance with the law; and

6.     For such other and further relief as the Court may deem proper.

Dated: January 31, 2023              PACIFIC JUSTICE INSTITUTE
                                      __/s/ RAY D. HACKE_____
                                      Ray D. Hacke
                                      Attorneys for Plaintiff
                                      NAOMI ONOFREI

## PROOF OF SERVICE

I am employed in the County of Marion, State of Oregon.  I am over the age of eighteen and not a16 party to the within action; my business address is 1850 45th Ave., Suite 33, Salem, OR 97305.

On or about January 31, 2023, I served the following documents on the interested parties by placing a true copy thereof enclosed in sealed envelope(s) addressed to said parties:

**COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES FOR RELIGIOUS DISCRIMINATION IN VIOLATION OF TITLE VII [42 U.S.C. § 2000e-2] AND ORS 659A.030(1)(a), AIDING AND ABETTING EMPLOYMENT DISCRIMINATION [ORS 659A.030(1)(g)], AND DEPRIVATION OF CIVIL RIGHTS [42 U.S.C. § 1983]**

## PLEASE SEE ATTACHED SERVICE LIST

_____BY MAIL:  I am readily familiar with the firm's practice of collection and processing of correspondence for mailing.  Under that practice, it would be deposited with the U.S. postal service on that same date with postage thereon fully prepaid at Salem, Oregon in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

  X   BY PERSONAL SERVICE:  I caused such envelope to be delivered by hand to the office of the addressee(s).

  X  )BY ELECTRONIC MAIL: I caused such documents to be served on the interested parties via electronic mail and through the court's ECF website.

_____(State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

  X   (Federal)  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on January 31, 2023, at Salem, Oregon.

*/s/ LAUREN PEFFERLE*
Lauren Pefferle

## SERVICE LIST

Alice Cuprill-Cuomas
Executive Vice President & General Counsel
Oregon Health & Science University
3181 SW Jackson Park Rd., Suite L85
Portland, OR 97239

# EXHIBIT "A"



*Content warning: In support of trauma-informed communications, please be aware that this message contains topics that may be activating for some community members. The* Confidential Advocacy Program  *can be reached 24/7 by calling 833-495-2277. Additional resources for OHSU members are available* here *.*

Every day at OHSU, thousands of dedicated researchers, clinicians, students and staff advance our focus of healing, teaching and discovery, to improve not just the lives of Oregonians, but of all those who interact with this institution. They do so with science as their guide and the belief that every individual should be able to make informed health care decisions for themselves, including whether or not to access abortion care.

History shows us that the impact of today's decision by the United States Supreme Court to roll back the protections of *Roe v. Wade* guarantees one thing: Abortion will become unsafe and less accessible for far too many people in this country. It should not be this way. We believe that access to health care of any kind, including abortion, should not be limited by location, resources, bias, prejudice or the absence of care.

Here at OHSU, we are resolute in our commitment to provide the full continuum of sexual and reproductive health care — including abortion — to all who seek it, and to educate the next generation of clinicians and advance groundbreaking research. As we face a post-*Roe* world, we acknowledge the increased responsibility we have, along with other providers in Oregon, to ensure people from out-of-state are able to access the critical care they need.

To the individuals who need this care, we stand with you. To the dedicated clinicians and advocates who work tirelessly to provide and advance abortion care, we stand with you. OHSU is committed to doing everything we can to support and advocate for you and for equitable access to comprehensive reproductive services for all people.

*OHSU is committed to ensuring a respectful, welcoming and inclusive place to learn, work and receive care for all people regardless of gender, race, religion and sexual orientation. Our position on this issue is based on our obligation to improve the health and well-being of Oregonians and beyond, not on politics. In taking a position on any issue, OHSU acknowledges that some within the community may disagree. We encourage respectful conversation and feedback so that we may all better understand one another. Only together can we fulfill our mission and stimulate the spirit of inquiry, initiative and cooperation among students, faculty and staff.*

 Previous Story
OHSU statement on gun violence, public safety

Next Story
PUBLIC NOTICE: Northwest Commission on Colleges and Universities to conduct comprehensive evaluation of OHSU on Oct. 24-26, 2022 

Media Contact

OHSU Communications

503 494-8231 ☎

Email OHSU ✉

Related

# EXHIBIT "B"



# OHSU Member COVID-19 Vaccine
# Religious Exception Request Form

*OHSU Members requesting religious exceptions must personally complete Part A, B and C. All OHSU Members requesting an exception must watch the required video on Occupational Health's webpage. Completed forms should be uploaded into Enterprise Health.*

## Part A: OHSU Member Name and Identifying Information

Name:  Naomi Onofrei_____

Mailing Address:  3377 NW Poppy Drive_____

City:  Corvallis_____ State:  OR_____ Zip Code:  97330_____

Preferred Pronoun(s):_____ Preferred Phone:  510.761.2792_____

Preferred Email:__onofrein@oregonstate.edu_____ Preferred Method of Contact: email_

Employee/Student ID #:U00063980_____ Job Title:  N/A, Pharmacy Student (P2)_____

Manager/Supervisor:_____

Department: _____

## Part B:   Religious Exception Request

Name of Religion:  ___Christian_____

✓   Receiving the COVID-19 vaccination conflicts with my religious observances, practices or beliefs as described below.

Please describe your religious observances, practices or beliefs and how it affects your ability to receive a COVID-19 vaccination

I am a practicing Christian, and the use of aborted fetal tissue in the development or testing of any vaccine or medical treatment is in opposition to my Christian faith (see attachment), which is why I seek exemption to COVID-19 vaccines.  Receiving a COVID-19 vaccine would violate my faith and conscience, directly opposing my faith (again, please see attached document).

Is there any other information regarding your beliefs, observances, or practices that would help us evaluate your request?   (for example, have you previously declined medical care because of your religious beliefs?)

I have declined the flu shot.  As a child, I was unable to consent to my vaccinations.  As a young adult, I was not aware of the use of aborted fetal tissue in the development or testing of vaccines.  My religious beliefs prevent me from also receiving blood transfusions and other medical treatments, procedures, or drugs that endanger or have endangered the life of an unborn baby, or that have profited from the use of fetal tissue in their development.

A recognized professional, (i.e. religious affiliate), who is familiar with your needs and can substantiate your request, may need to be contacted. Please provide the following information regarding the religious affiliate:



# OHSU Member COVID-19 Vaccine
# Religious Exception Request Form

Name of Professional: Steven J. Clough

Title: Deacon/Teacher

Represented Organization: Grace Bible Church (Biblical Christianity)

Street Address: 20560 Royal Avenue

City:  Hayward                    State:  CA                    Zip Code: 94541

Telephone: 916-476-1230                                        Email:
minstevenclough@gmail.com

How long have you had a relationship with the recognized religious professional?:

Three years_____

**AUTHORIZATION:** I authorize Oregon Health & Science University (OHSU) to discuss my circumstances, religious practices, observances and beliefs with the professional religious affiliate named above, and I authorize that religious affiliate to discuss my need for reasonable accommodation with OHSU.

_____
Signature

## Part C:  OHSU Member Attestation

It is OHSU's position that COVID-19 is a highly contagious respiratory virus that affects people of all ages. This virus can cause long-term medical problems and death regardless of age. This virus spreads through respiratory secretions related to speaking, singing, yelling, coughing, and sneezing. Infected individuals can spread the virus to others. Up to 50% or more of people can be infected without realizing it. The COVID-19 vaccines are very safe and highly effective at preventing death and hospitalization. When large numbers within a population are immunized, viral spread will be significantly limited and the development of viral variants can be slowed . Each individual of a community can contribute to this protective approach.

**By signing this form, I acknowledge and affirm that:**

- I am requesting a religious exception from receiving the COVID-19 vaccination.
- OHSU recommends individuals receive COVID-19 vaccination to protect themselves, their families and people they work or live with.
- I understand OHSU's position is that if I am not vaccinated, I may become sick with COVID-19 and may put others at risk of serious illness, disability or death.



# OHSU Member COVID-19 Vaccine
## Religious Exception Request Form

- If I am a student, I understand not being vaccinated against COVID-19 may impact my ability to participate in external rotations that require vaccination and this may impact my academic progression.
- I have received information about how the vaccine helps protect against COVID-19.
- I have reviewed the materials available on https://www.ohsu.edu/health/unsure-about-covid-vaccines-information-consider-and-how-learn-more and watched the required video on vaccination.
- If I want to, I have been able to ask questions and have my questions answered.
- It is my decision to decline vaccination at this time, even though I have received information about why it is important and the risk of not getting vaccinated. I understand that I may change my mind in the future and receive a vaccination.

By signing this form, I declare and acknowledge that I have read and understand the information on this form. Notwithstanding, I am requesting a religious exception from the COVID-19 vaccine.

**Signature of OHSU Member**: _____ **Date:** 03/24/2022_____

Upload this completed form to Enterprise Health at https://webchartnow.com/ohsu/webchart.cgi.



47-525 Kamehameha Hwy
Kaneohe, Hawaii 96744

Phone: 808.262.8800
Fax: 808.262.8809
www.calvarychapelkaneohe.com
www.JDFarag.org

October 13,  2021

To Whom It May Concern:

I am writing on behalf of Naomi C Onofrei, a member of our online congregation at Calvary Chapel Kaneohe, in Hawaii, regarding their religious conviction against forced vaccines.

We do not wish to be labeled as anti-vaccine or anti-science, however, the well-documented process of vaccines developed from animal and aborted human fetal tissue has compelled us to stand by our congregants who refuse to comply with mandatory vaccinations.

We strongly support their deeply held Biblical conviction as a believer in, and follower of Jesus Christ and any of our congregants to resist the pressure for vaccinations.

We are convinced that the nature of many other contaminants within vaccines should be a reason to grant exemptions to believers whose bodies are, as the Scripture states, the "temple of the Lord."

- 1 Corinthians 3:16-17 – "Don't you know that you yourselves are God's temple and that God's Spirit dwells in your midst? If anyone destroys God's temple, God will destroy that person; for God's temple is sacred, and you together are that temple."
- 2 Corinthians 7:1 – "Therefore, since we have these promises, dear friends, let us purify ourselves from everything that contaminates body and spirit, perfecting holiness out of reverence for God."

We must follow the Word of God and we also exhort others to a conscientious objection to these vaccines. Yet, our deep love and care for others makes us determined to seek alternatives that ensure others' safety in each individual case, and also ensure that such alternatives do not violate one's freedom of choice.

We thank you for granting this religious exemption and as such respecting religious freedom.

Sincerely,

J.D. Farag
Senior Pastor
Calvary Chapel Kaneohe

JDF:gl

# EXHIBIT "C"

 Gmail

Ray Hacke <rhacke@pji.org>

---

**Dismissal From Pharmacy Program**
6 messages

---

**Ray Hacke** <rhacke@pji.org>                                                      Thu, May 5, 2022 at 9:33 AM
To: onofrein@oregonstate.edu

Ms. Onofrei,

My name is Ray D. Hacke, and I'm the Pacific Justice Institute's Oregon-based staff attorney. Thank you for reaching out.

Based on what you've told me, I believe you may have multiple causes of action against Oregon State University (I see you're in Corvallis). Please give me a call at the number below, and we can discuss your case further.

--
Ray D. Hacke
Staff Attorney
Pacific Justice Institute
P.O. Box 5229
Salem, OR 97304
Phone: (503) 917-4409
Fax: (916) 857-6902

"If the foundations are destroyed, what can the righteous do?" -- Psalm 11:3

---

**Onofrei, Naomi** <onofrein@oregonstate.edu>
To: Ray Hacke <rhacke@pji.org>

Hello Ray,

I've copied and pasted the dismissal email from OHSU below.  I have also attached the documents I sent in as part of my request for a religious exemption to continue my PharmD at OHSU. 28th (week 9 of 10 of my winter quarter of 2nd year) to let me know my continuation in the program may no longer be possible due to OHSU's stringent COVID vaccine requirements; howeve the drastic difference in COVID vaccine policies between OSU and OHSU before beginning my 2nd year, I could have saved time and money and looked into the possibility of transferring to a would still have lost money).  Now, I am left with even more student loans and time I cannot get back.

Additionally, I have been hired for a pharmacy internship at OHSU starting this June and going on for 2 years; I have not yet let them know my predicament.  Is this something that can also be

Thank you so much for reaching out to me and the offer to help- I cannot tell you what this means to me as I spent the last couple weeks praying, but feeling demoralized.

God bless you!

Kind regards,
Naomi Onofrei

Naomi Onofrei: Decisi



**Vaccine Exception Review Committee** <verc@ohsu.edu>
to me, Vaccine

[This email originated from outside of OSU. Use caution with links and attachments.]

OHSU has completed its review of your request for an exception to the COVID-19 vaccine requirement. Based on the information you submitted and OHSU's narrow criteria estal This is a final decision and may not be appealed.

Please know that each review had two independent assessments by members of the Vaccine Exception Review Committee, which included representatives from Affirmative Actic the Legal Department, Occupational Health and Student Health and Wellness. These decisions were made using specific criteria to determine if your request met the legal definit

Denials occur because the requestor did not meet the legal requirements for a religious exception, but instead stated personal beliefs or conscious objections as opposed to a fur religious exception include:

- Arguments for free will, religious freedom or against compulsion.

- Concerns over vaccine safety or content.

- An objection to the vaccine on the basis of fetal cell concerns, either in the vaccines or in testing and development.

- A personal revelation from God about the vaccine.

- An objection to the COVID vaccine based upon bodily integrity or sanctity and/or a belief that the vaccine is "unclean."

We understand this is difficult news to receive and recognize that you may have deeply held personal convictions which nonetheless do not meet the narrow legal requirements f...

OHSU firmly stands behind the community benefit of vaccination against COVID-19. The decision not to get vaccinated can have negative consequences to the unvaccinated per...

On Thu, May 5, 2022 at 9:33 AM Ray Hacke <rhacke@pji.org> wrote:

> [This email originated from outside of OSU. Use caution with links and attachments.]
>
> [Quoted text hidden]

---

**2 attachments**

 **Religious-exemption-request-form (6).docx**
58K

 **Covid Exemption Letter Naomi C  Onofrei 85750.pdf**
435K

---

**Ray Hacke** <rhacke@pji.org>                                                                Thu, May 5, 2022 at 9:43 PM
To: "Onofrei, Naomi" <onofrein@oregonstate.edu>
Cc: Lauren Pefferle <lpefferle@pji.org>

Hi, Naomi,

OHSU is egregiously in the wrong here: OHSU flat-out said what religious beliefs it did not find acceptable or worthy of consideration for an exemption. OHSU is not free to state which beliefs are valid or worthy, as that flat-out violates the First Amendment's Establishment and Free Exercise clauses.

My legal assistant, Lauren Pefferle, will send you a representation agreement.

Ray D. Hacke
Staff Attorney
Pacific Justice Institute
[Quoted text hidden]

---

**Onofrei, Naomi** <onofrein@oregonstate.edu>                                      Fri, May 6, 2022 at 2:05 PM
To: Ray Hacke <rhacke@pji.org>
Cc: Lauren Pefferle <lpefferle@pji.org>

Hi Ray,

Thanks for letting me know and I'll be looking out for Laruen's email.

Best,
Naomi
[Quoted text hidden]

---

**Lauren Pefferle** <lpefferle@pji.org>                                                    Tue, May 10, 2022 at 5:02 PM
To: Ray Hacke <rhacke@pji.org>

Hi Ray,
For Naomi, am I writing up a Representation Agreement regarding OHSU and OSU,
or just OHSU?

**Join PJI's Freedom Monthly Membership Program. Click HERE!**

Sincerely,
**Lauren Pefferle**
Legal Secretary - Oregon Office
**Pacific Justice Institute**
Office: (916) 857-6900



ATTORNEY/CLIENT PRIVILEGED CONFIDENTIAL MATERIAL
The information contained in this e-mail message, and all attachments, is covered by the attorney/client and or work product privilege and is confidential information intended only for the use of the individual or entity named above. If you have received this communication in error, please immediately notify us by return e-mail. Thank You.

On Thu, May 5, 2022 at 9:43 PM Ray Hacke <rhacke@pji.org> wrote:
[Quoted text hidden]

---

**Ray Hacke** <rhacke@pji.org>                                                               Tue, May 10, 2022 at 5:13 PM
To: Lauren Pefferle <lpefferle@pji.org>

Just OHSU. Oregon State upheld its end of the bargain.
[Quoted text hidden]

# EXHIBIT "D"

 Gmail

**Ray Hacke <rhacke@pji.org>**

---

## Intern Request for Religious Exemption
1 message

---

**Onofrei, Naomi** <onofrein@oregonstate.edu>                    Thu, Jun 9, 2022 at 12:18 PM
To: verc@ohsu.edu
Cc: Ray Hacke <rhacke@pji.org>

Dear Vaccine Exception Review Committee,

I have been hired as a pharmacy intern at OHSU and I request a COVID-19 religious exemption because I am starting next Thursday.

Attached you will find an exemption request document for my pharmacy internship beginning on Thursday, June 16th, along with a letter describing my deeply and sincerely held religious beliefs.

Additionally, I have CC'd my attorney on this case.

Thank you.

Sincerely,

Naomi Onofrei
--





**Naomi Onofrei**
*Pharm.D. Candidate, Class of 2024*
OTC Med Safety Co-Chair
Oregon State University | Oregon Health and Science University
510.761.2792 | onofrein@oregonstate.edu

---

**2 attachments**

 **Covid Vaccine Religious Objection Letter (1).pdf**
39K

 **Religious-exemption-request-form.docx.pdf**
116K

# EXHIBIT "E"

# OHSU Member COVID-19 Vaccine
# Religious Exception Request Form



*OHSU Members requesting religious exceptions must personally complete Part A, B and C. All OHSU Members requesting an exception must watch the required video on Occupational Health's webpage. Completed forms should be uploaded into Enterprise Health.*

## Part A: OHSU Member Name and Identifying Information

Name:  Naomi Onofrei

Mailing Address:  3377 NW Poppy Drive

City:  Corvallis                                State:  OR              Zip Code:  97330

Preferred Pronoun(s):                              Preferred Phone:  510.761.2792

Preferred Email:   onofrein@oregonstate.edu                Preferred Method of Contact: email

Employee/Student ID #:U00063980            Job Title:  N/A, Pharmacy Student (P2)

Manager/Supervisor:

Department:

## Part B:   Religious Exception Request

Name of Religion:  ___Christian

____✓____ Receiving the COVID-19 vaccination conflicts with my religious observances, practices or beliefs as described below.

Please describe your religious observances, practices or beliefs and how it affects your ability to receive a COVID-19 vaccination

SEE ATTACHED DOCUMENT.

Is there any other information regarding your beliefs, observances, or practices that would help us evaluate your request?   (for example, have you previously declined medical care because of your religious beliefs?)

SEE ATTACHED DOCUMENT.

A recognized professional, (i.e. religious affiliate), who is familiar with your needs and can substantiate your request, may need to be contacted. Please provide the following information regarding the religious affiliate:

Name of Professional: Steven J. Clough

Title: Deacon/Teacher

# OHSU Member COVID-19 Vaccine
# Religious Exception Request Form



Represented Organization: Grace Bible Church (Biblical Christianity)

Street Address: 20560 Royal Avenue

City: Hayward                    State: CA                    Zip Code: 94541

Telephone: 916-476-1230                                    Email:
minstevenclough@gmail.com

How long have you had a relationship with the recognized religious professional?:

Three years_____

**AUTHORIZATION:** I authorize Oregon Health & Science University (OHSU) to discuss my circumstances, religious practices, observances and beliefs with the professional religious affiliate named above, and I authorize that religious affiliate to discuss my need for reasonable accommodation with OHSU.

_____
Signature

## Part C:  OHSU Member Attestation

It is OHSU's position that COVID-19 is a highly contagious respiratory virus that affects people of all ages. This virus can cause long-term medical problems and death regardless of age. This virus spreads through respiratory secretions related to speaking, singing, yelling, coughing, and sneezing. Infected individuals can spread the virus to others. Up to 50% or more of people can be infected without realizing it. The COVID-19 vaccines are very safe and highly effective at preventing death and hospitalization. When large numbers within a population are immunized, viral spread will be significantly limited and the development of viral variants can be slowed . Each individual of a community can contribute to this protective approach.

**By signing this form, I acknowledge and affirm that:**

- I am requesting a religious exception from receiving the COVID-19 vaccination.
- OHSU recommends individuals receive COVID-19 vaccination to protect themselves, their families and people they work or live with.
- I understand OHSU's position is that if I am not vaccinated, I may become sick with COVID-19 and may put others at risk of serious illness, disability or death.
- If I am a student, I understand not being vaccinated against COVID-19 may impact my ability to participate in external rotations that require vaccination and this may impact my academic progression.
- I have received information about how the vaccine helps protect against COVID-19.
- I have reviewed the materials available on https://www.ohsu.edu/health/unsure-about-covid-vaccines-information-consider-and-how-learn-more and watched the required video on vaccination.

# OHSU Member COVID-19 Vaccine
## Religious Exception Request Form



●      If I want to, I have been able to ask questions and have my questions answered.

●      It is my decision to decline vaccination at this time, even though I have received information about why it is important and the risk of not getting vaccinated. I understand that I may change my mind in the future and receive a vaccination.

By signing this form, I declare and acknowledge that I have read and understand the information on this form. Notwithstanding, I am requesting a religious exception from the COVID-19 vaccine.

**Signature of OHSU Member**: _____**Date:** 06/09/2022_____

Upload this completed form to Enterprise Health at https://webchartnow.com/ohsu/webchart.cgi.

9 June 2022

To Whom It May Concern:

I, Naomi Onofrei, hold as:

My sincerely held religious beliefs as a spiritual being with a Christian worldview do not allow me to receive a COVID-19 vaccine.

My beliefs are an all-encompassing guide to my daily life choices and while I am not perfect, I strive to honor GOD in all I do.

Matthew 22:37 - "Jesus said to him, 'You shall love the Lord your God with all your heart, with all your soul, and with all your mind.'"

1 Thessalonians 5:21-22 - "Test all things; hold fast what is good. Abstain from every form of evil."

The COVID-19 vaccines include the current COVID-19 mRNA vaccines and the Janssen vaccine which are produced with aborted fetal cell lines. The Johnson & Johnson vaccine (Janssen), uses retinal cells from a fetus that was aborted in 1985 and treated in a lab.  Since the Pfizer and Moderna vaccines test the mRNAs on fetal cell lines from an aborted fetus cell from 1973, therefore, in my sincerely held belief as a spiritual being with a Christian worldview, I cannot use any product that takes its origin in abortion, which is the murder of those made in the image of God.

Genesis 1:26 - "Then God said, 'Let Us make man in Our image, according to Our likeness; let them have dominion over the fish of the sea, over the birds of the air, and over the cattle, over all the earth and over every creeping thing that creeps on the earth.'"

Genesis 9:6 - "Whoever sheds man's blood, By man his blood shall be shed; For in the image of God He made man."

Exodus 20:13 - "You shall not murder."

Exodus 21:22-25 - "If men fight, and hurt a woman with child, so that she gives birth prematurely, yet no harm follows, he shall surely be punished accordingly as the woman's husband imposes on him; and he shall pay as the judges determine. But if any harm follows, then you shall give life for life…"

Psalm 139: 13 - "For you created my inmost being; you knit me together in my mother's womb."

The inmost being is extremely sacred. I will not knowingly participate in the process to use such a product that violates the right to life and dishonors the lives of the unborn. God's word tells me to keep my body pure. I cannot receive a COVID-19 vaccine under any circumstance.
My Body is the "... Temple of the Living GOD..." 1 Corinthians 6:19-20, and I shall not knowingly do any harm to myself or others by participating in this program.

1 Corinthians 3:16-17 - "Do you not know that you are the temple of God and that the Spirit of God dwells in you?  If anyone defiles the temple of God, God will destroy him. For the temple of God is holy, which temple you are."

2 Corinthians 7:1 - "Therefore, having these promises, beloved, let us cleanse ourselves from all filthiness of the flesh and spirit, perfecting holiness in the fear of God.

I trust in the LORD. Ephesians 6:10-18 directs us to "put on the armor of God," so that we can be equipped with truth, righteousness, peace, and faith. We are taught not to be afraid and that we have divine protection. In GOD and Jesus Christ, I Trust.

I wish to be able to begin my employment as an OHSU intern, as my future career depends upon it, and I am willing to make the necessary adjustments that will work towards that end without violating my conscience.

The law requires accommodations to be offered for religious exemptions.  My sincerely held ethical, moral, and religious beliefs are universal, encompassing my belief and faith in Jesus Christ and I cannot violate my conscience, given to me by God. I hereby request a religious exemption to the COVID-19 vaccine.

I am available to answer additional questions if needed, provided they are a "reasonable inquiry," as allowed for by law.


Sincerely,


Naomi Onofrei

# EXHIBIT "F"

 **Ray Hacke <rhacke@pji.org>**

---

## Fwd: Naomi Onofrei: Decision on your vaccine exception request (Req#190)

**Onofrei, Naomi** <onofrein@oregonstate.edu>                          Thu, Jun 23, 2022 at 6:05 PM
To: Ray Hacke <rhacke@pji.org>
Cc: Lauren Pefferle <lpefferle@pji.org>

Dear Ray,

My request for a religious exemption for the OHSU internship has been denied.

Please let me know what the status of the letter is, as well as if anything can be done for the (paid) internship that I can no longer participate in due to my COVID vaccine status.

Thank you for your help and support.

Kind regards,
Naomi

---------- Forwarded message ----------
From: <verc@ohsu.edu>
Date: Thursday, June 23, 2022
Subject: Naomi Onofrei: Decision on your vaccine exception request (Req#190)
To: onofrein@oregonstate.edu
Cc: verc@ohsu.edu


[This email originated from outside of OSU. Use caution with links and attachments.]

# Vaccine Exception Review Committee (VERC) - request update

## Naomi Onofrei: Decision on your vaccine exception request (Req#190)

OHSU has completed its review of your request for an exception to the COVID-19 vaccine requirement. Based on the information you submitted and OHSU's narrow criteria established under the law for approvals, you are not approved for a religious exception. This is a final decision and may not be appealed.

Please know that each review had two independent assessments by members of the Vaccine Exception Review Committee, which included representatives from Affirmative Action Equal Opportunity (AAEO), Center for Diversity and Inclusion, Human Resources, the Legal Department, Occupational Health and Student Health and Wellness. These decisions were made using specific criteria to determine if your request met the legal definition of a religious or medical exception.

Denials occur because the requestor did not meet the legal requirements for a religious exception, but instead stated personal beliefs or conscious objections as opposed to a fundamental tenet of a religious faith. Examples of beliefs that do not qualify for a religious exception include:

- Arguments for free will, religious freedom or against compulsion.
- Concerns over vaccine safety or content.
- An objection to the vaccine on the basis of fetal cell concerns, either in the vaccines or in testing and development.
- A personal revelation from God about the vaccine.
- An objection to the COVID vaccine based upon bodily integrity or sanctity and/or a belief that the vaccine is "unclean."

We understand this is difficult news to receive and recognize that you may have deeply held personal convictions which nonetheless do not meet the narrow legal requirements for a religious exception.

OHSU firmly stands behind the community benefit of vaccination against COVID-19. The decision not to get vaccinated can have negative consequences to the unvaccinated person and to those around them. While we acknowledge each individual's right to their opinion and choice about vaccination, we also need to ensure OHSU sets policy to protect our patients and our community.

If you are not compliant with OHSU's COVID-19 Vaccine Policy by the deadline, 21-calendar days prior to the start of term, OHSU will have to rescind your admissions offer. To be considered compliant by this deadline, you must have submitted all documentation of proof of vaccine and be fully vaccinated (14 days must pass since the completion of your vaccine series) by the first day of term.

Thank you,
Vaccine Exception Review Committee

*(NS5)*

# EXHIBIT "G"

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Seattle Field Office**
909 First Avenue, Suite 400
Seattle, WA 98104
(206) 576-3000
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 12/21/2022

**To:** Naomi Onofrei
13707 NE 64th Circle
VANCOUVER, WA 98682
Charge No: 551-2023-01054

EEOC Representative and email:    Kayla Dreysse
Investigator
kayla.dreysse@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 551-2023-01054.

On Behalf of the Commission

December 21, 2022                              for
Date                              Elizabeth M. Cannon
Director

**Cc: Emily Shults**
**shultse@ohsu.edu**

Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC
*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a FOIA Request or 2) a Section 83 request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your request for the charge file promptly to allow sufficient time for EEOC to respond and for your review. Submit a signed written request stating it is a "FOIA Request" or a "Section 83 Request" for Charge Number 551-2023-01054 to the District Director at Nancy Sienko, 450 Golden Gate Avenue 5 West PO Box 36025

San Francisco, CA 94102.

You can also make a FOIA request online at https://eeoc.arkcase.com/foia/portal/login.

Enclosure with EEOC Notice of Closure and Rights (01/22)

You may request the charge file up to 90 days after receiving this Notice of Right to Sue.  After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA Requests and Section 83 Requests, go to: https://www.eeoc.gov/eeoc/foia/index.cfm.

# EXHIBIT "H"

# Date Calculator: Add to or Subtract From a Date

Enter a start date and add or subtract any number of days, months, or years.

Count Days    **Add Days**    Workdays    Add Workdays    Weekday    Week №

From **Wednesday, December 21, 2022**
Added 90 days

## Result: Tuesday, March 21, 2023

### Calendar showing period from December 21, 2022 to March 21, 2023

| December 2022 | | | | | | | January 2023 | | | | | | | February 2023 | | | | | | | March 2023 | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10 days added | | | | | | | 31 days added | | | | | | | 28 days added | | | | | | | 21 days added | | | | | | |
| Sun | Mon | Tue | Wed | Thu | Fri | Sat | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Sun | Mon | Tue | Wed | Thu | Fri | Sat |
| | | | | 1 | 2 | 3 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | | | | 1 | 2 | 3 | 4 | | | | 1 | 2 | 3 | 4 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 | 29 | 30 | 31 | | | | | 26 | 27 | 28 | | | | | 26 | 27 | 28 | 29 | 30 | 31 | |

☐ = Start date (Dec 21, 2022)    ☐ = Final result date (Mar 21, 2023)



**Time & Date Calculator App for iOS**

See how long remains before a deadline or exactly when those 30 days are up.

# EXHIBIT "I"

 **Gmail**

**Ray Hacke <rhacke@pji.org>**

___

## Naomi Onofrei; Oregon Tort Claims Act Letter
1 message

___

**Ray Hacke** <rhacke@pji.org>
To: cuprillc@ohsu.edu
Cc: Lauren Pefferle <lpefferle@pji.org>
Bcc: "Onofrei, Naomi" <onofrein@oregonstate.edu>

Tue, Oct 11, 2022 at 11:14 AM

Ms. Cuprill-Comas,

My name is Ray D. Hacke, and I'm the Pacific Justice Institute's Oregon-based staff attorney. I represent Naomi Onofrei, a Christian student whom Oregon Health & Science University denied the ability to transfer to OHSU's Portland campus from Oregon State University to complete her Doctorate in Pharmacy, as well as the ability to participate in a paid internship that would have advanced her pharmaceutical career, because she declined to receive a COVID-19 vaccine based on her sincerely held religious beliefs, as OAR 333-019-1010(3)(a) expressly allows.

Attached hereto is the letter that I am required to submit to you in compliance with the Oregon Tort Claims Act. Please respond to this e-mail to confirm receipt. Thank you.

--
Ray D. Hacke
Staff Attorney-Oregon
Pacific Justice Institute
P.O. Box 5229
Salem, OR 97304
Phone: (503) 917-4409
Fax: (916) 857-6902

"If the foundations are destroyed, what can the righteous do?" -- Psalm 11:3

___

 **OHSU Letter.docx**
138K



ALBANY
NEW YORK

ATLANTA
GEORGIA

ATLANTIC CITY
NEW JERSEY

BILOXI
MISSISSIPPI

BOSTON
MASSACHUSETTS

CHICAGO
ILLINOIS

CINCINNATI
OHIO

DETROIT
MICHIGAN

HOUSTON
TEXAS

MIAMI
FLORIDA

MILWAUKEE
WISCONSIN

NEW YORK
NEW YORK

PHILADELPHIA
PENNSYLVANIA

RENO
NEVADA

SACRAMENTO
CALIFORNIA

SALEM
OREGON

SAN FRANCISCO
CALIFORNIA

SANTA ANA
CALIFORNIA

TRI CITIES
WASHINGTON

October 11, 2022

<u>**VIA ELECTRONIC MAIL**</u>
Alice Cuprill-Comas
Oregon Health & Science University
Legal Department
3181 SW Sam Jackson Park Rd. L85
Portland, OR 97239
E-mail: cuprillc@ohsu.edu

       **Re: Notice of Tort Claims**
           **Claimant: Naomi Onofrei, 3377 NW Poppy Dr., Corvallis, OR 97330**
           **Dates of Injuries: April 18, 2022 and June 23, 2022**
           **Claimant's Attorney: Ray D. Hacke, Pacific Justice Institute**
                   **P.O. Box 5229, Salem, OR 97304**

Dear Ms. Cuprill-Comas:

The Pacific Justice Institute ("PJI"), a non-profit law firm devoted to defending individuals' religious freedom – including the rights of conscience of those currently working, or who aspire to work, in the healthcare industry – has been retained by Naomi Onofrei, a student whom Oregon Health & Science University ("OHSU") has prohibited from (1) continuing in the Doctor of Pharmacy ("PharmD") program that it operates jointly with Oregon State University ("Oregon State," and collectively with OHSU the "Universities"), at least during the 2022-23 school year, and (2) participating in an internship for which OHSU hired her – all because she declined to receive a COVID-19 vaccine on religious grounds.  Kindly direct all correspondence related to this matter to the undersigned at the e-mail address below. Thank you.

## I.  <u>Statement of Facts</u>

As stated *supra*, the Universities jointly and collaboratively offer a PharmD program in which students enroll and take classes in Oregon State's College of Pharmacy for two years, then transfer to OHSU's Portland campus to complete their PharmD degree, which is conferred by both Universities.[1]  Ms. Onofrei enrolled in the program during the 2020-21 school year and has completed her first two years of the program at Oregon State.  She had planned to transfer to OHSU during the Fall 2022 quarter to continue working toward her degree as well as participate in a paid internship for which OHSU hired her.  However, as explained in further detail below, OHSU has actively prevented her from doing so.

Ms. Onofrei is a devout Christian who opposes abortion based on her sincerely held belief that the Bible condemns the murder of unborn babies.  Due to her religious opposition to abortion, Ms. Onofrei cannot, in good conscience, receive medical treatments, procedures, or drugs (collectively "treatments") that in any way involve the use of fetal tissue from aborted babies.  Ms. Onofrei refuses to take flu shots for this reason and extensively researches other

---

[1] https://pharmacy.oregonstate.edu/ohsu#:~:text=The%20Doctor%20of%20Pharmacy%20program%20at%20Oregon%20State,OSU%20and%20OHSU%20are%20noted%20on%20the%20diploma.

treatments so she may comply with her religious convictions, either by (1) finding and using treatments that do not involve the use of tissue from aborted fetuses or (2) if no such treatments exist, avoiding such treatments, even at the risk of contracting a potentially grave illness.  Receiving such treatments would, in Ms. Onofrei's view, not only support the unbiblical practice of abortion by funneling money into the pockets of manufacturers who use tissue from aborted babies in the testing and development of their treatments, if not in the treatments themselves, but also perpetuate the murderous practice.  The treatments Ms. Onofrei cannot, in good conscience, receive include all of the COVID-19 vaccines currently available in the United States: Based on Ms. Onofrei's research, the vaccines' manufacturers' all use tissue from aborted babies either in the vaccines themselves or in the vaccines' testing and development.

In August 2021, Oregon's governor, Kate Brown ("Gov. Brown"), issued an executive order (the "Mandate") requiring all persons in healthcare settings throughout the state to become vaccinated against COVID-19.  *See* OAR 333-019-1010.  Gov. Brown's Mandate applies to student healthcare workers [*id.*, subsection (2)(f)(A)], and OHSU's Portland campus presumably qualifies as a "healthcare setting" [*id.*, subsection (2)(g)(A)].  Even so, Gov. Brown's Mandate explicitly allows students pursuing healthcare careers to request, and their institutions and employers to grant, religious exceptions to the vaccination requirement.  *Id.*, subsections (3)-(4).

On March 24, 2022,[2] in preparation for her transfer from Oregon State to OHSU, Ms. Onofrei submitted to OHSU a request for a religious exemption from the Mandate's vaccination requirement.  On April 18, OHSU's Vaccine Exception Review Committee ("VERC" or the "Committee") notified Ms. Onofrei via e-mail that it had denied her request, asserting that she "did not meet the requirements for a religious exception, but instead stated personal beliefs or conscious [sic] objections as opposed to a fundamental tenet of a religious faith."  The e-mail from VERC went on to list "[e]xamples of beliefs that do not qualify for a religious exception," including "[a]n objection to the vaccine based on fetal cell concerns, either in the vaccines or in testing and development."

OHSU also hired Ms. Onofrei to work as a pharmacy intern, with a start date of June 16.  In preparation for her internship, on June 9, Ms. Onofrei filed yet another request for a religious exception.  Again, VERC denied her request, informing her via e-mail on June 23 that the Committee was denying her request for the same reasons it had prohibited her from transferring to OHSU for the 2022-23 school year.  OHSU denied both of Ms. Onofrei's religious exception requests even though she provided letters not only from herself, but also from pastors whose churches she'd attended, that explained what her religious beliefs were and backed them up with verses from the Bible.

Because OHSU has prevented Ms. Onofrei from transferring to OHSU and participating in her internship, Ms. Onofrei has had no choice but to take a sabbatical from the Universities' PharmD program.  She has explored the option of transferring to universities outside of

---

[2] Hereinafter all references to dates will be to dates in calendar year 2022 unless noted.

Oregon, but that has proven problematic for various reasons.  Ms. Onofrei has also experienced extreme anxiety over her future, not to mention depression and emotional distress resulting from OHSU's discriminatory treatment of her.  Accordingly, Ms. Onofrei is pondering a career switch despite the considerable amount of time, effort, and money she has devoted to obtaining her PharmD from the Universities.

## II.  Legal Discussion

The U.S. Supreme Court could not have been more clear in *Employment Div., Ore. Dept. of Human Resources v. Smith*, 494 U.S. 872 (1990) (*Smith*): States cannot lend their power "to one or the other side in controversies over religious authority or dogma." *Id.* at 877.  Indeed, "[w]hen the power, prestige and financial support of government is placed behind" – or, for that matter, against – "a particular religious belief, ***the indirect coercive pressure upon religious (individuals) to conform to the prevailing approved religion is plain***[.]" *Sch. Dist. of Abington Twp. v. Schempp*, 374 U.S. 203, 221 (1963) (*Schempp*) (emphasis added).  This is especially true when a state university attempts to condition the availability of a benefit – be it enrollment or employment with that university – upon an individual's "willingness to violate a cardinal principle of her faith[.]" *Sherbert v. Verner*, 374 U.S. 398, 406 (1961).  In such a circumstance, the university "impose[s] disabilities on the basis of religious views" in violation of the U.S. Constitution and federal law.  *Smith*, 494 U.S. at 877.

In this case, as a government entity under ORS 353.020, OHSU is a state actor that must operate within the restraints that the U.S. Constitution places upon it.  *Natl. Collegiate Ath. Assn. v. Tarkanian*, 488 U.S. 179, 192 (1988) ["A state university without question is a state actor"].  OHSU is also an employer subject to the provisions of both Title VII and its Oregon state-law equivalent, ORS 659A.030, and the Eleventh Amendment does not protect state employers from religious discrimination claims brought by their former employees.  *Alaska v. Equal Employment Opportunity Commn.*, 508 F.3d 476, 484 (9th Cir. 2007) ["Title VII expressly provides that state employers can be defendants to such claims and therefore abrogates the States' sovereign immunity"].

### A.  In Denying Ms. Onofrei a Religious Exception and Not Allowing Her to Transfer From Oregon State, OHSU Has Shown Hostility Toward Ms. Onofrei's Religious Beliefs in Violation of the U.S. Constitution's Religion Clauses.

The Free Exercise Clause of the U.S. Constitution's First Amendment "protects against government hostility which is masked as well as overt." *Church of the Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 534 (1993) (*Lukumi*).  The First Amendment's Establishment Clause likewise prohibits government entities from expressing disapproval of particular religious beliefs.  *Id.* at 532; *see also Schempp*, 374 U.S. at 222 [declaring that "to withstand the strictures of the Establishment Clause," a government entity's policy "must have a secular purpose and a primary effect that neither advances nor ***inhibits*** religion" (emphasis added)].  "The distinction between the two clauses is apparent – a violation of the Free Exercise Clause is predicated on coercion while the Establishment Clause violation need not be so attended." *Schempp*, 374 U.S. at 223.

3

1.  OHSU's Refusal to Grant Ms. Onofrei Religious Exemptions to Attend School in Portland or Participate in Her Internship Based on Her Religious Opposition to Abortion Violates the Free Exercise Clause Because it Inhibits Religion.

"[T]he protections of the Free Exercise Clause pertain *if the law at issue discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons*." *Lukumi*, 508 U.S. at 532 (emphasis added). "The Free Exercise Clause of the First Amendment protects against 'indirect coercion or penalties on the free exercise of religion, not just outright prohibitions.'" *Carson v. Makin*, 142 S. Ct. 1987, 1996 (2022) [quoting *Lyng v. Northwest Indian Cemetery Protective Assn.*, 485 U.S. 439, 450 (1988)]. This is especially true where a state entity places the individual in the impossible situation of having to choose between adhering to his or her sincerely held religious convictions and abandoning those convictions to receive a benefit or privilege. *Id.* [quoting *Sherbert*, 374 U.S. at 404 (declaring that "the liberties of religion and expression may be infringed by the denial of or placing of conditions upon a benefit or privilege")].

Freedom of religion includes the right to refuse medical treatment. *Kemp v. Workers' Compensation Dept.*, 65 Or. App. 659, 664 (1983). Generally, neither OHSU nor any other government entity can deny someone a benefit based on that individual's refusal to obtain such treatment on religious grounds. *Id.* at 666. With regard to COVID-19 vaccines, forcing employees to choose "between their jobs and their jabs," or between "their beliefs and their benefits" – including the compensation they would receive if they were working – is inherently coercive. *Sambrano v. United Airlines, Inc.*, 2022 U.S. App. LEXIS 4347 at \*\*19-20 and \*\*23-24 (5th Cir. Feb. 17, 2022) (*Sambrano II*) [quoting *BST Holdings, LLC v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021) and *Sambrano v. United Airlines, Inc.*, 19 F.4th 839, 841 (5th Cir. 2021) (*Sambrano I*) (Ho, J., dissenting)].

In this case, in not allowing Ms. Onofrei to transfer to OHSU from Oregon State for the Fall 2022 quarter, OHSU has effectively attempted to coerce Ms. Onofrei to abandon her religious beliefs as a condition of completing her degree: Coupled with its refusal to grant Ms. Onofrei a religious exemption from receiving the COVID-19 vaccine, OHSU has put Ms. Onofrei in the impossible position of having to choose between her sincerely held religious beliefs and the pharmacy career she has already spent significant time, effort, and money pursuing. This is precisely the sort of overt governmental hostility toward religion that federal constitutional law prohibits. *See*, e.g., *Sherbert*, 374 U.S. at 404. The same goes for OHSU's denial of a religious exemption to Ms. Onofrei with regard to her internship: OHSU has put Ms. Onofrei in the impossible position of having to choose between gaining valuable experience that will not only reflect well on her resumé when pursuing jobs after graduation, but is necessary for her to obtain a pharmacy license, and abandoning her religious convictions.

The U.S. Supreme Court has made clear that a law which burdens the free exercise of religion and is neither neutral nor generally applicable is subject to strict scrutiny under the U.S. Constitution. *Lukumi*, 508 U.S. at 531 [citing *Smith*, 494 U.S. at 879]. "Neutrality and general applicability are interrelated[.] … [F]ailure to satisfy one requirement is a likely

4

indication that the other has not been satisfied." *Id.* Here, OHSU's stance concerning opposition to COVID-19 vaccines that are rooted in opposition to abortion is by no means neutral, as its effectively declares Ms. Onofrei's religious beliefs concerning the use of cells from aborted babies in the testing and development of vaccines, or in the vaccines themselves, to be unworthy of an exemption from the COVID-19 vaccination requirement. E-mail From VERC to Naomi Onofrei re: Transfer to OHSU Portland Campus (April 18, 2022) ("E-mail re: Transfer"); E-mail From VERC to Naomi Onofrei re: Internship (June 23, 2022) ("E-mail re: Internship"). OHSU's policy concerning abortion-related opposition to the COVID-19 vaccines violates the neutrality requirement because it discriminates on its face. *Lukumi*, 508 U.S. at 533 ["(T)he minimum requirement of neutrality is that a law not discriminate on its face"].

OHSU has asserted to Ms. Onofrei that students or employees who oppose receiving COVID-19 vaccines based on their opposition to abortion do not qualify for religious exemptions because their opposition constitutes "personal beliefs or conscious [sic][3] objections as opposed to a fundamental tenet of a religious faith." E-mail re: Transfer; E-mail re: Internship. OHSU's position is meritless: Ms. Onofrei's beliefs concerning the use of tissue from aborted babies in the testing and development of COVID-19 vaccines is rooted in religion and therefore qualify for protection under the Free Exercise Clause. *Frazee v. Ill. Dept. of Employment Sec.*, 489 U.S. 829, 833 (1989) (*Frazee*). Moreover, the U.S. Supreme Court has made clear that "***religious beliefs need not be acceptable***, logical, consistent, or comprehensible to others in order to merit First Amendment protection." *Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 714 (1981) (*Thomas*) (emphasis added). OHSU has declared on its website's home page its commitment to providing abortion services even after the Supreme Court invalidated *Roe v. Wade*, the case that made abortion legal nationwide, earlier this year. *See* https://www.ohsu.edu/ (last viewed on Oct. 3, 2022); *see also Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2242 (2022) [overruling *Roe* and declaring that "(t)he Constitution makes no reference to abortion, and no such right is implicitly protected by any constitutional provision"]. OHSU's support for abortion rights is thus not a valid reason to demonstrate hostility toward the anti-abortion religious views of students and employees such as Ms. Onofrei – and Ms. Onofrei qualifies as both. *See* OAR 333-019-1010(2)(f)(A) [defining "healthcare providers and healthcare staff" to include "student personnel"].

OHSU's policy discriminating against students and employees whose religious objections to receiving a COVID-19 vaccines does not serve a compelling government interest – Gov. Brown's Mandate would not allow for religious exemptions for healthcare workers otherwise [*see* OAR 333-019-1010(3)-(4)] – nor is it narrowly tailored to serve that interest. Rather, the policy singles out a particular group of religious adherents for special disabilities – specifically, disqualification from eligibility for a religious exception from the Mandate. *Lukumi*, 508 U.S. at 557 (Scalia, J., concurring). OHSU should thus strongly reconsider its denials of religious exceptions to Ms. Onofrei with regard to her transfer to OHSU's Portland campus and her internship and amend its discriminatory policy immediately.

---

[3] OHSU presumably meant to use the word "conscience" or "conscientious" in this sentence.

2.  OHSU's Refusal to Grant Ms. Onofrei Religious Exemptions to Attend School in Portland or Participate in Her Internship Based on Her Religious Opposition to Abortion Violates the Establishment Clause Because it Sends a Signal of Official Disapproval of Ms. Onofrei's Beliefs.

An "establishment" of religion exists where a state effectively prohibits a form or worship or lends its sovereign support or opposition to a given religious activity.  *Walz v. Tax Commn. of N.Y.*, 397 U.S. 664, 668 (1979).  As stated *supra*, state entities violate the Establishment Clause by lending their power "to one or the other side in controversies over religious authority or dogma."  *Smith*, 494 U.S. at 877.  Indeed, "[i]f there is any fixed star in our constitutional constellation, it is that ___*no official, high or petty*___, can prescribe what shall be orthodox in … ___*religion*___[] or other matters of opinion ___*or force citizens to confess by word or act their faith therein*___."  *W. Va. Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943) (emphasis added).

In this case, in declaring that abortion-based opposition to the COVID-19 vaccine is not a valid reason to request a religious exception from the Mandate, OHSU has effectively established a religion.  E-mail re: Transfer; E-mail re: Internship.  In doing so, OHSU has overstepped its constitutional bounds: "It is not within the judicial ken" – or the legislative or executive kens, for that matter – "to question the centrality of particular beliefs or practices to a faith, or the validity of particular [individuals'] interpretations of those creeds."  *Smith*, 494 U.S. at 887 [quoting *Hernandez v. Commr.*, 490 U.S. 680, 699 (1989)].

The Establishment Clause "requires the state to be ___*neutral*___ in its relations with groups of religious believers and non-believers; it does ___*not*___ require the state to be their adversary.  ___*State power is no more to be used to handicap religions than it is to favor them*___."  *Schempp*, 374 U.S. at 218 (emphasis added) [quoting *Everson v. Bd. of Educ.*, 330 U.S. 1, 18 (1947)].  In declaring that abortion-based opposition to COVID-19 vaccines is not a valid reason to request a religious exemption, OHSU is abandoning all semblance of neutrality and using state power to handicap religions that oppose abortion.  OHSU has sent "a signal of official disapproval" of Ms. Onofrei's religious beliefs, thereby disfavoring her religious basis for pursuing a religious exception from Gov. Brown's Mandate.  This, the Establishment Clause does not allow.  *Masterpiece Cakeshop, LLC v. Colorado Civil Rights Commn.*, 138 S. Ct. 1719, 1731 (2018) [noting states' "duty under the First Amendment not to base laws or regulations on hostility to a religion or religious viewpoint"].

**B.  OHSU Has Discriminated Against Ms. Onofrei in Violation of the U.S. Constitution's Equal Protection Clause.**

The U.S. Constitution's Equal Protection Clause declares that government institutions may not "make or enforce any law which shall abridge the privileges and immunities of citizens of the United States; nor shall any [government institution] deprive any person of life, liberty, or property without due process of law."  U.S. Const. amend. XIV, § 1.  To establish an equal protection violation under 42 U.S.C. § 1983, a plaintiff must show that the defendant, acting

6

under color of state law, intentionally discriminated against him or her as a member of an identifiable class.  *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1134 (9th Cir. 2003).  Where a plaintiff "asserts discrimination based on religion, which is a protected class, the strict scrutiny standard is applied."  *Davis v. Powell*, 901 F. Supp. 2d 1196, 1220 (S.D. Cal. 2012).  To satisfy strict scrutiny, a state entity must "demonstrat[e] that its course was justified by a compelling state interest and was narrowly tailored in pursuit of that interest." *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2422 (2022).

Here, Ms. Onofrei can present evidence of all three of the elements set forth in *Flores*: Ms. Onofrei can show that (1) in denying her religious exceptions with regard to both to her transfers to OHSU's Portland campus and her internship, VERC acted under color of state law; (2) Ms. Onofrei is a Christian, and courts recognize religion as a protected class [*Davis*, 901 F. Supp. 2d at 1220]; and (3) VERC acted with discriminatory intent, declaring that her beliefs were not worthy of a religious exception.  E-mail re: Transfer; E-mail re: Internship.

The Supreme Court has made clear that government action "targeting religious beliefs as such is never permissible[.]"  *Lukumi*, 508 U.S. at 533.  In equal protection cases, the Court may determine a government entity's object "from both direct and circumstantial evidence." *Id.* at 540.  "Relevant evidence includes, among other things, the historical background of the decision under challenge, the specific series of events leading to the enactment or official policy in question, and the legislative or administrative history, including contemporaneous statements made by members of the decisionmaking body."  *Id.*  Here, Ms. Onofrei can show statements by OHSU declaring that her religious opposition to receiving a COVID-19 vaccine, which was rooted in her opposition to both abortion itself and vaccine manufacturers' use of tissue from aborted babies in the testing and development of the vaccines, was not a valid reason for an exception.  E-mail re: Transfer; E-mail re: Internship. Ms. Onofrei can also show circumstantial evidence, including statements from OHSU's website declaring OHSU's unequivocal support for abortion rights and commitment to providing abortion services, which demonstrate discriminatory intent.

"A person may not be compelled to choose between the exercise of a First Amendment right and participation in an otherwise available [government] program."  *Thomas*, 450 U.S. at 716.  OHSU cannot make religious exceptions from COVID-19 vaccination available to religious adherents whose opposition to abortion does not factor into their requests and deny exceptions to those for whom the use of tissue from aborted babies in the testing and development of the vaccines is a factor that renders taking the vaccines unconscionable.  *Id.* [quoting *Everson*, 330 U.S. at 16].  In doing so, OHSU has denied Ms. Onofrei equal protection of the laws.

### C.  OHSU Has Discriminated Against Ms. Onofrei in Violation of Title VII and ORS 659A.030.

Title VII of the Civil Rights Act of 1964 "prohibit[s] discrimination by an employer 'against any individual with respect to his compensation, ***terms***, ***conditions***, or privileges of employment, because of such individual's … religion[.]'"  *See Sambrano II*, 2022 U.S. App.

7

LEXIS 4347 at *21 (emphasis added) [quoting 42 U.S.C. § 2000e-2(a)(1)].  "The term 'religion' includes *__all__* aspects of religious observance and practice, ***as well as belief***[.]" *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 602 (9th Cir. 2004) (emphasis added).  "Through Title VII, Congress ***intended to protect the same rights in private employment that the [U.S.] Constitution protects***."  *Sambrano II*, 2022 U.S. App. LEXIS 4347 at **21-22 (emphasis added) [internal quotations omitted]; *see also Meltebeke v. Bureau of Labor & Industries*, 120 Ore. App. 273, 283 fn. 4 (1993) (Edmonds, J., specially concurring) ["Title VII is designed to protect (against) an imposition on an individual (employee's) beliefs" (internal quotations omitted)], *aff'd*, 322 Ore. 132 (1995).

Courts analyze Title VII religious discrimination claims – as well as claims under Oregon's state law equivalent, ORS 659A.030[4] – under a two-part framework: "First, [the] plaintiff employee must establish a prima facie case by proving that (1) he has a bona fide religious belief, the practice of which conflicts with an employment duty; (2) he informs [the] defendant employer of the belief and conflict; and (3) defendant threatens him with or subjects him to discriminatory treatment[.]"  *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1438 (9th Cir. 1993).  Here, Ms. Onofrei can prove all three elements:

- Ms. Onofrei can provide uncontroverted evidence of a bona fide religious belief that she cannot allow to be injected into her body a vaccine connected to the use of aborted fetal cells in its testing or manufacture – including all of the COVID-19 vaccines available on the U.S. market – and her belief conflicted with OHSU's requirement its employees receive COVID-19 vaccines;

- In requesting a religious exception for her paid internship, Ms. Onofrei informed OHSU of her bona fide belief in submitting a written request for a religious exemption from the vaccination requirement – something Gov. Brown's Mandate expressly allows [Or. Admin. R. 333-019-1010(3)(a)]; and

- OHSU subjected Ms. Onofrei to discriminatory treatment in denying her request, thereby preventing Ms. Onofrei from being able to serve in the internship for which OHSU hired her.

If an employee "makes out a prima facie failure-to-accommodate case, the burden then shifts to" the employer – in this case, OHSU – to show one of two things under the second part of the above-referenced Title VII framework: (1) The employer "'initiated good faith efforts to accommodate reasonably the employee's religious practices,'" or (2) the employer "'could not reasonably accommodate the employee due to undue hardship.'"  *Peterson*, 358 F.3d at 606 [quoting *Tiano v. Dillard Dept. Stores*, 139 F.3d 679, 681 (9th Cir. 1998) (*Tiano*)].  As indicated *supra*, OHSU made no effort to accommodate Ms. Onofrei's religious beliefs.  E-mail re: Internship.  As for undue hardship, OHSU has made no assertion of undue hardship, or any hardship at all, for that matter.  *Id.*  OHSU has simply declared Ms. Onofrei's religious beliefs unworthy of an exemption from the COVID-19

---

[4] *See*, e.g., *Campbell v. Knife River Corp.-Northwest*, 783 F. Supp. 2d 1137, 1147 (D. Or. 2011).

8

vaccination requirement.  *Id.*

Under Title VII, "the amount of evidence that an employee must produce" to meet its burden under the two-part framework described *supra* is "very little."  *Peterson*, 358 F.3d at 606 [quoting *Chuang v. Univ. of Cal., Davis*, 225 F.3d 1115, 1124 (9th Cir. 2000) (concerning evidence of religious discrimination in Title VII cases)].  Ms. Onofrei can meet that burden here, as she can provide enough "relevant particulars" to support "a reasonable inference that [her] termination was discriminatory," and in violation of Title VII, because OHSU could have accommodated her sincere religious beliefs but refused to do so.  *Id.* at 606 [quoting *Chuang*, 225 F.3d at 1124].  Accordingly, OHSU has violated Title VII.

## III.  <u>Demand</u>

Based on the foregoing, OHSU has placed itself in a very actionable position.  Accordingly, PJI hereby demands that OHSU accommodate Ms. Onofrei's religious convictions by doing the following:

- Notifying PJI, in writing, that OHSU will accommodate Ms. Onofrei's sincerely held religious beliefs by allowing her to (1) enroll at OHSU during the Winter 2023 quarter and (2) begin working at her paid internship, effective immediately;
- Refunding all monies for tuition, books, and other expenses that Ms. Onofrei paid for the 2022-23 school year; and
- Providing written proof to PJI, in writing, that OHSU will no longer deny religious exceptions to students or employees whose opposition to receiving COVID-19 vaccines is based on the manufacturers' use of tissue from aborted babies in the testing and development of such vaccines, or in the vaccines themselves.

Please contact the undersigned at the e-mail address below **<u>no</u> <u>later</u> than 5 p.m. Wednesday, October 19**, to indicate whether OHSU will comply with the above demand.  If PJI does not hear from you by that time, PJI will have no alternative but to pursue injunctive relief with regard to Ms. Onofrei's enrollment at OHSU and damages for her *de facto* firing from her internship in federal court.


Sincerely,

*Ray D. Hacke*

Ray D. Hacke
PACIFIC JUSTICE INSTITUTE
P.O. Box 5229
Salem, OR 97304
Tel: (503) 917-4409
E-mail: rhacke@pji.org

9